1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   GEORGE W. CONDRASHOFF, et al.,            No.  2:24-cv-00108-DAD-DB

12                  Plaintiffs,

13          v.                                 ORDER GRANTING DEFENDANT'S
                                               MOTION TO DISMISS CERTAIN CLAIMS
14   GENERAL MOTORS LLC,
                                               (Doc. No. 5)
15                  Defendant.

16

17          This matter is before the court on defendant's motion to dismiss certain claims brought by

18   plaintiffs in this action.  (Doc. No. 5.)  On February 5, 2024, the pending motion was taken under

19   submission to be decided on the papers pursuant to Local Rule 230(g).  (Doc. No. 7.)  For the

20   reasons explained below, the court will grant defendant's motion to dismiss.

21                                     **BACKGROUND**

22          Plaintiffs George W. Condrashoff and Benita Gwyn Asher bring this automobile "lemon

23   law" and fraud action against defendant General Motors LLC ("defendant" or "GM"), alleging

24   the following in their complaint.  In August or September 2020, plaintiffs acquired a new 2020

25   Chevrolet Bolt ("the subject vehicle") from "Tracy Chevrolet, an authorized dealer and agent of

26   [defendant GM]."[1]  (Doc. No. 1-1 at 3, ¶¶ 4–6.)  As part of that transaction, GM "issued an

27   ───────────────────────────

28   [1]  In their complaint, plaintiffs allege two different dates of acquisition of the subject vehicle:
     August 14, 2020 (paragraph 6) and September 6, 2020 (paragraph 25).  (Doc. No. 1-1 at 3, 6.)

                                              1

express warranty which would only be issued by [GM] as a result of the sale of the vehicle." (*Id.* at ¶ 6.)  According to plaintiffs, the sale of the subject vehicle by a GM dealership, coupled with the issuance of the express warranty, created a transactional and contractual relationship between GM and plaintiffs, such that the dealership is an agent of GM for the purpose of the transaction. (*Id.*)  GM does "not sell vehicles directly to members of the general public." (*Id.*)

At the time plaintiffs acquired the subject vehicle, GM had advertised the Bolt "as a long range, affordable electric vehicle on its website," and GM "dealership personnel assured plaintiff of the long-range and safe nature of the vehicle." (*Id.* at ¶ 26.)

In October 2015, GM touted the Bolt as an affordable, long range vehicle. (*Id.* at ¶ 14.) In a January 2016 press release, GM represented that the Bolt would have a battery range over 200 miles because the battery has improved thermal operating performance. (*Id.* at ¶ 15.)

In December 2016, GM first became aware of issues with the battery and energy management related issues in the Bolt and instituted a battery exchange program to replace defective batteries. (*Id.* at ¶ 16.)  Despite this knowledge, GM began running commercials in January 2017 featuring the range of the battery in the Bolt, a "long range" and "affordable" vehicle. (*Id.* at ¶ 17.)  In October 2017, the National Highway Traffic Safety Administration ("NHTSA") "published a warning that overcharging lithium ion batteries, such as the battery in the Bolt, can result in spontaneous ignition." (*Id.* at ¶ 18.)  In November 2017 and April 2018, GM created repair programs for the Bolt in response to "issues with low voltage batteries" and "to update the vehicle's software for a low voltage condition and reports of vehicles losing propulsion." (*Id.* at ¶¶ 19–20.)  In August 2018, GM "created another program related to the battery's software and its ability to monitor the charge of the battery." (*Id.* at ¶ 22.)  In March 2019, GM became aware of the first battery fire involving the Bolt. (*Id.* at ¶ 23.)  Despite GM's knowledge of the fire risk posed by charging the battery to full capacity, later that year, in October 2019, GM held an event to address questions regarding the Bolt, and one of its employees and Bolt battery expert, Adam Piper, stated the following on behalf of GM: "We engineered the battery system so that you can charge to 100% and maximize range.  Do whatever is best for your personal circumstances.  If you want maximum range, charge to 100%." (*Id.* at

¶ 24.)  By August 2020, GM "was aware of at least 12 fires" involving the Bolt.  (*Id.* at ¶ 25.)  These alleged events "occurred prior to plaintiffs' purchase of the subject vehicle" and evidence GM's knowledge of the defect in the Bolt battery.  (*Id.* at ¶ 23.)  Yet, GM did not "disclose the battery issues to plaintiffs or alter its marketing campaign" for the Bolt.  (*Id.*)  The marketing materials for the 2020 Bolt pictured the vehicle as capable of being charged indoors in a garage.  (*Id.* at ¶ 29.)

In October 2020, NHTSA opened an investigation into the Bolt.  (*Id.* at ¶ 27.)  On an unspecified date in 2021, GM issued a recall notice for the Bolt, "stating that its batteries may ignite when nearing a full charge."  (*Id.* at ¶ 30.)  Through this recall, GM "warned plaintiff that the vehicle's charge should not exceed 90%, the battery mileage should not fall below seventy (70) miles remaining, and the vehicle should not be parked indoors overnight."  (*Id.*)

According to plaintiffs, GM had "marketed the subject vehicle in [a] false and misleading manner by advertising it as safe and function[al]," but it "is neither safe nor functional for normal use due to the presence of defective and dangerous lithium-ion battery modules."  (*Id.* at ¶ 28.)  GM "falsely represented that the subject vehicle is safe and functional for normal use" but the vehicle's "batteries may ignite when they are either fully charged or fall below seventy (70) miles remaining mileage," and "[t]he vehicle also cannot be parked inside overnight due to fire risk."  (*Id.* at ¶ 13.)  Further, the alleged affirmative misrepresentations and fraudulent omissions by defendant caused plaintiffs to suffer injury in the form of anxiety, fear, and emotional distress.  (*Id.* at ¶¶ 32, 44, 93.)

In their complaint, plaintiffs bring five claims against defendant under California law: three claims of breach of warranties in violation of the Song-Bervely Consumer Warranty Act, a claim of common law fraud, and a claim under California's Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq.* ("UCL").  (Doc. No. 1-1 at 2.)

On January 16, 2024, defendant filed the pending motion to dismiss only plaintiffs' fourth claim (fraud) and fifth claim (UCL).  (Doc. No. 5.)  Plaintiffs filed an opposition to the pending motion on January 30, 2024.  (Doc. No. 6.).  Defendant filed its reply thereto on February 7, 2024.  (Doc. No. 8.)

**LEGAL STANDARD**

**A.     Motion to Dismiss Under Rule 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider material that is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiffs' complaint

/////

4

1  necessarily relies on them, and matters of public record.  *Lee v. City of Los Angeles*, 250 F.3d.

2  668, 688–89 (9th Cir. 2001).

3  **B.      Heightened Pleading Standard Under Rule 9(b)**

4         "When an entire complaint, or an entire claim within a complaint, is grounded in fraud

5  and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district

6  court may dismiss the complaint or claim."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107

7  (9th Cir. 2003).  Under Rule 9(b), the "circumstances constituting the alleged fraud [must] be

8  specific enough to give defendants notice of its particular misconduct . . . so they can defend

9  against the charge and not just deny that they have done anything wrong."  *Kearns v. Ford Motor*

10  *Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Bly-Magee*

11  *v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).  To satisfy the particularity standard of

12  Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct

13  charged, as well as what is false or misleading about the purportedly fraudulent statement, and

14  why it is false."  *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020)

15  (quotations omitted) (quoting *Davidson v. Kimberley-Clark Corp.*, 889 F.3d 956, 964 (9th Cir.

16  2018)).  However, "[m]alice, intent, knowledge and other conditions of a person's mind may be

17  alleged generally."  *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 404

18  (9th Cir. 2021) (quoting Fed. R. Civ. P. 9(b)); *see also Klaehn v. Cali Bamboo LLC*, No. 21-

19  55738, 2022 WL 1830685, at *2 (9th Cir. 2022)[2] ("Under Fed. R. Civ. P. 9(b), a plaintiff must

20  plead circumstances from which a court can plausibly infer the defendant's knowledge.").

21                                    **ANALYSIS**

22         In the pending motion, defendant argues that plaintiffs have failed to state cognizable

23  fraud and UCL claims because their allegations are deficient for several reasons.  (Doc. No. 5.)

24  As for the fraud claim and the "fraudulent" prong of the UCL claim, defendants contend that:  (i)

25  plaintiffs' allegations of fraud lack the requisite specificity of "how, when, where, to whom, and

26  by what means the alleged fraud occurred"; (ii) "plaintiffs fail to allege facts plausibly showing

27  _____

28  [2]  Citation to the unpublished Ninth Circuit opinions such as those cited here and elsewhere in this
order is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1  that GM knew of and intentionally misrepresented or concealed any material facts before

2  plaintiffs bought their vehicle"; (iii) plaintiffs' allegations that GM advertised EPA mileage

3  estimates cannot form the basis of a misrepresentation claim as a matter of law; (iv) plaintiff does

4  not sufficiently allege a transactional relationship with GM that would trigger a duty to disclose;

5  and (v) plaintiffs' fraudulent concealment claim is barred by the economic loss rule.  (*Id.* at 8–9.)

6  As for the "unlawful" prong of plaintiffs' UCL claim, defendant argues that this claim cannot be

7  predicated on plaintiffs' warranty claims, and plaintiffs have not identified any other statute or

8  law on which they predicate their UCL claim.  (*Id.* at 20–21.)  As for the "unfair" prong of the

9  UCL claim, defendant argues that this claim fails because plaintiffs "do not reference any

10  established public policy that GM's actions had violated or claim that the conduct is immoral,

11  unethical, oppressive, or unscrupulous."  (*Id.* at 21–22.)

12      Plaintiffs' opposition brief is largely unhelpful and does not address the vast majority of

13  the arguments advanced by defendant in its motion to dismiss.  Apart from a single page of

14  perfunctory legal argument regarding the existence of a transactional relationship and the

15  economic loss rule, plaintiffs' opposition brief merely provides a brief summary of plaintiffs'

16  allegations (without any citations to paragraphs in the complaint) and recites the applicable legal

17  standard for Rule 12(b)(6) motions.  (Doc. No. 6.)  Indeed, by their silence, plaintiffs appear to

18  concede the merits of the bulk of defendant's arguments.  *See Lopez v. County of Los Angeles*,

19  No. 3:15-cv-03804-TEH, 2016 WL 54123, at *2 (N.D. Cal. 2016) ("[B]ecause Plaintiff failed to

20  oppose many arguments in the instant motion to dismiss, the Court may treat such non-opposition

21  as implicit consent to the merits of the arguments asserted, and consequently as consent to

22  dismissal of the Complaint."); *Lou v. JP Morgan Chase Bank N.A.*, No. 3:17-cv-04157-WHO,

23  2018 WL 1070598, at *2 (N.D. Cal. Feb. 26, 2018) ("Courts have found that a failure to oppose

24  an argument serves as a concession.").

25      Nonetheless, the court will proceed to analyze whether plaintiffs have sufficiently alleged

26  cognizable fraud and UCL claims.

27  /////

28  /////

**A.      Plaintiffs' Fraud Claim**

Under California law, "[t]he elements of fraud are:  (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."  *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (citing *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996)).  To state a cognizable fraud claim, a plaintiff must allege facts to satisfy these elements with the requisite particularity and specificity of Rule 9(b).  *See Moore*, 966 F.3d at 1019; *Kearns*, 567 F.3d at 1124.

Plaintiffs' fraud claim is based on two separate theories as to the first element:  affirmative misrepresentation and fraudulent concealment.  (Doc. No. 1-1 at 13–14.)  As noted above, defendant moves to dismiss this claim, arguing that plaintiffs' allegations are insufficient to state a cognizable fraud claim under either theory.  (Doc. No. 5.)  Because the court agrees that plaintiffs have not sufficiently alleged facts that would satisfy the first element of their fraud claim, the court will dismiss this claim on that basis and will not address defendant's arguments regarding the other elements.

1.      Affirmative Misrepresentation

To support their affirmative misrepresentation theory of fraud, plaintiffs allege that GM marketed on its website and in advertisements that the Bolt "had a long range and was safe," and these marketing statements "were echoed by GM's dealership personnel at the time of sale who assured plaintiffs that the vehicle had a long range and was safe."  (Doc. No. 1-1 at 12, ¶ 80.) Plaintiffs allege that GM's "representations were false because the vehicle in fact contains a lithium-ion battery that causes the vehicle to overheat during prolonged use, resulting in a substantial reduction in the range capability of the vehicle."  (*Id.* at ¶ 81.)

Plaintiffs' allegations are plainly insufficient under the heightened pleading standard of Rule 9(b), which "requires the pleader of fraud to 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'"  *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 3:15-MD-02672-CRB-JSC, 2019 WL 4581340, at *5 (N.D. Cal. Sept. 20, 2019) (quoting *Odom v. Microsoft*

*Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (en banc)).  For example, a plaintiff alleging affirmative misrepresentations in marketing and advertising must "specify what the television advertisements or other sales material specifically stated," "when he was exposed to them and which ones he found material."  *Kearns*, 567 F.3d at 1126 (affirming the district court's dismissal of a fraud claim where the plaintiff "failed to articulate the who, what, when, where, and how of the misconduct alleged," and thus "failed to plead his averments of fraud with particularity").  In their complaint, plaintiffs have failed to plead any such specifics with regard to the alleged misrepresentations by defendant.  Plaintiffs' allegation that "defendant's mileage range advertisements were part of an extensive advertising campaign, and plaintiffs were exposed to the advertisements" is not specific enough to satisfy Rule 9(b)'s pleading standard.  *See also In re Volkswagen "Clean Diesel" Mktg.*, 2019 WL 4581340, at *5–6 (dismissing a fraud claim brought against Volkswagen because the "plaintiffs have not identified the time and place of Volkswagen's representations to them," "plaintiffs have not adequately identified the parties to the representations," "plaintiffs have not identified which of [Volkswagen's] advertisements they were exposed to and found material," and "[g]eneral allegations about Volkswagen's media campaign are not sufficient to support plaintiffs' misrepresentation claims").  Moreover, plaintiffs' allegations of statements made by Adam Piper regarding charging the Bolt battery to 100% are insufficient to save their fraud claim because, as defendant emphasizes in its motion and which plaintiffs wholly ignore in their opposition, plaintiffs allegations are "devoid of any clarification as to whom Mr. Piper said this to, whether plaintiffs heard this statement, and whether plaintiffs relied on it."  (Doc. No. 5 at 14.)

In addition, to the extent plaintiffs intend to allege that defendant's affirmative misrepresentations consisted of GM's marketing and advertising of the Bolt's mileage range of over 200 miles on a full battery, those allegations cannot support a fraud claim as a matter of law. *See Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 F. App'x 608, 609 (9th Cir. 2014) ("When applied to the fuel economy context, '[a]s a matter of law, there is nothing false or misleading' about a car manufacturer's advertising that identifies the EPA fuel economy estimates for the car. Thus, no misrepresentation occurs when a manufacturer merely advertises EPA estimates.")

(quoting *Paduano v. Am. Honda Motor Co.,* 169 Cal. App. 4th 1453, 1470 (2009)).  Indeed, other courts have specifically considered GM's representations with regard to fuel economy and mileage range based on EPA estimates for the same vehicle at issue in this case (the Bolt) and have found such allegations to be insufficient to support the plaintiffs' fraud claims as a matter of law.  *See In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 960 (E.D. Mich. 2022) (dismissing the affirmative misrepresentation-based fraud claim even though the plaintiffs had identified "several statements by GM about the Bolt's range:  several pre-release statements that the Bolt was 'designed to offer more than 200 miles of range,'" and explaining that "[o]nly where a manufacturer makes specific additional representations that go beyond those EPA estimates are statements of fuel efficiency and range actionable") (citation and internal quotation marks omitted); *see also Kuehl v. Gen. Motors LLC*, No. 2:23-cv-06980-SB-SK, 2023 WL 8353784, at *2 (C.D. Cal. Nov. 17, 2023) ("GM's marketing of the Bolt's 259-mile range is [] not a misrepresentation as a matter of law."); *McDonald v. Gen. Motors LLC*, No. 23-cv-1584-KK-DFM, 2024 WL 1601844, at *5 (C.D. Cal. Feb. 23, 2024) ("Plaintiff has failed to adequately plead an affirmative misrepresentation claim to the extent it is predicated upon alleged misrepresentations regarding the [Bolt's] battery capacity."); *Antonov v. Gen. Motors LLC*, No. 8:23-cv-01593-FWS-MJR, 2024 WL 217825, at *7–8 (C.D. Cal. Jan. 19, 2024) (dismissing the plaintiff's affirmative misrepresentation-based fraud claim regarding GM's mileage advertisements for the Bolt).

For these reasons, defendant's motion to dismiss plaintiffs' fraud claim based on a theory of affirmative misrepresentations will be granted.

2.   Fraudulent Concealment

"A fraud claim based upon the suppression or concealment of a material fact must involve a defendant who had a legal duty to disclose the fact."  *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1186 (2014).  In other words, "[a] fraud claim based on concealment is actionable only if there is a duty to disclose."  *Kuehl*, 2023 WL 8353784, at *3.

> Under California law, a duty to disclose may arise where:  (1) "the defendant is the plaintiff's fiduciary;" (2) "the defendant has exclusive knowledge of material facts not known or reasonably

9

accessible to the plaintiff;" (3) "the defendant actively conceals a material fact from the plaintiff;" or (4) "the defendant makes partial representations that are misleading because some other material fact has not been disclosed."

*Antonov*, 2024 WL 217825, at *10 (quoting *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011)).

In their complaint, plaintiffs merely recite the second, third, and fourth circumstances under which a duty to disclose may arise and allege in conclusory fashion that defendant had a duty to disclose that the Bolt's battery was unsafe at the time of their purchase.  (*See* Doc. No. 1-1 at 15, ¶ 89.)  Such "threadbare recitals" of the requisite elements, "supported by mere conclusory statements, do not suffice."  *See Iqbal*, 556 U.S. at 676; *see also Antonov*, 2024 WL 217825, at *10 (finding that the plaintiff's "allegations are merely '[t]hreadbare recitals' of circumstances in which the duty to disclose can arise under California law that are otherwise unsupported by specific facts and thus insufficient to demonstrate a duty to disclose").  Plaintiffs have therefore failed to plead their fraudulent concealment claim with particularity, even under the more relaxed pleading standard that applies to omission-based fraud claims.  *See Tappana v. Am. Honda Motor Co.*, 609 F. Supp. 3d 1078, 1088 (C.D. Cal. 2022) (explaining that to plead a claim based on fraud by omission, the plaintiff "must both describe the content of the omission and where the omitted information should or could have been revealed").

Thus, the court will also grant defendant's motion to dismiss plaintiff's fraud claim based on a theory of fraudulent concealment.

**B.      Plaintiffs' UCL Claim**

California's UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code §§ 17200, *et seq*.  "The UCL is a broad remedial statute that permits an individual to challenge wrongful business conduct 'in whatever context such activity might occur.'"  *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.*, 20 Cal. 4th 163, 181 (1999)).  Here, plaintiffs allege that defendant's conduct violated all three prongs of the UCL.  (Doc. No. 1-1 at 15–19.)  In moving to dismiss this cause of action, defendant argues that plaintiffs have not

10

1    adequately alleged their UCL claim under any prong.  (Doc. No. 5 at 20–22.)

2         1.   "Fraudulent" Prong

3         To plead a UCL claim predicated on a defendant's allegedly fraudulent business practices,

4    a plaintiff must "state with particularity the circumstances constituting fraud" in support of the

5    claim.  *See Kearns*, 567 F.3d at 1124 (quoting Fed. R. Civ. P. 9(b)); *Deutsch v. Flannery*, 823

6    F.2d 1361, 1365 (9th Cir. 1987) ("[A] pleading satisfies the particularity requirement [of Rule

7    9(b)] if it identifies the circumstances constituting fraud so that the defendant can prepare an

8    adequate answer from the allegations.").

9         For the same reasons discussed above regarding plaintiffs' failure to sufficiently allege

10   their fraud claim with particularity, plaintiffs have likewise failed to sufficiently allege a UCL

11   claim predicated on a fraudulent business practice.  *See McDonald*, 2024 WL 1601851, at *6

12   ("Because Plaintiff's entire UCL claim is grounded in fraud but does not adhere to the

13   particularity standard of Rule 9(b), Plaintiff has failed to adequately plead her UCL claim.");

14   *Antonov*, 2024 WL 217825, at *12 ("Because Plaintiff's claim for a violation of the UCL's

15   'fraudulent prong' relies on the same theories of fraudulent misrepresentation and fraudulent

16   concealment that the court found to be insufficient [], the court concludes Plaintiff has also failed

17   to allege a violation of the 'fraudulent prong' of the UCL.")

18        Accordingly, the court will also grant defendant's motion to dismiss plaintiffs' UCL claim

19   based on the "fraudulent" prong.

20        2.   "Unlawful" Prong

21        "By proscribing any unlawful business practice, [the UCL] borrows violations of other

22   laws and treats them as unlawful practices that the unfair competition law makes independently

23   actionable."  *Cel-Tech,* 20 Cal. 4th at 180 (citation and internal quotation marks omitted).

24   "Virtually any law—federal, state or local—can serve as a predicate for an action under [the

25   UCL]."  *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001).  However,

26   "[w]here a plaintiff cannot state a claim under the 'borrowed' law, he cannot state a UCL claim

27   either."  *Dawson v. HITCO Carbon Composites, Inc.*, No. 16-cv-7337-PSG-FFM, 2017 WL

28   7806618, at *8 (C.D. Cal. Jan. 20, 2017).

1    In its motion to dismiss, defendant emphasizes that plaintiffs did not identify any

2    predicate law that is borrowed to support their UCL claim under the "unlawful" prong.  (Doc. No.

3    5 at 20–21.)  As noted above, in their opposition, plaintiffs did not respond to any of defendant's

4    arguments regarding their UCL claim.  While not entirely clear, to the extent plaintiffs intend for

5    their UCL claim to borrow from their insufficiently alleged fraud claims, their UCL claim under

6    the "unlawful" prong clearly fails.  *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 992

7    (S.D. Cal. 2012) ("A UCL claim must be dismissed if the plaintiff has not stated a claim for the

8    predicate acts upon which he bases the claim.").  To the extent plaintiffs intend for their UCL

9    claim to borrow from their claim of breach of express warranties in violation of the Song-Beverly

10   Act, that too fails.  *See Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 859 (N.D. Cal. 2012)

11   (dismissing the plaintiff's UCL claim to the extent that it was predicated on violations of express

12   warranties because "an alleged breach of a warranty—a contract—'is not itself an unlawful act

13   for purposes of the UCL'") (quoting *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d

14   1094, 1110 (E.D. Cal. 2010)).  "An act that breaches a contract may also breach the UCL, but

15   only when the act is unfair, unlawful of fraudulent for some additional reason."  *Boland*, 685 F.

16   Supp. 2d at 1110.  However, to the extent plaintiffs intend for their UCL "unlawful prong" claim

17   to be predicated on their claim of breach of *implied* warranties in violation of the Song-Beverly

18   Act, that alleged violation could serve as a predicate for their UCL claim.  *See Elias v. Hewlett-*

19   *Packard Co.*, No. 12-cv-00421-LHK, 2014 WL 493034, at *11, n.12 (N.D. Cal. Feb. 5, 2014)

20   (distinguishing between express warranty claims and implied warranty claims under the Song-

21   Beverly Act in determining whether the alleged violation can be borrowed for the UCL

22   "unlawful" prong).  Thus, out of an abundance of caution, even though plaintiffs did not specify

23   any predicate "borrowed" law underlying their UCL claim, the court will grant defendant's

24   motion to dismiss this claim but only in part.

25        Accordingly, defendant's motion to dismiss plaintiffs' UCL claim based on the

26   "unlawful" prong—to the extent it is predicated on plaintiffs' fraud and express warranty

27   claims—will be granted.  However, defendant's motion to dismiss plaintiffs' UCL claim based on

28   /////

the "unlawful" prong—to the extent it is predicated on plaintiff's implied warranty claim under the Song-Beverly Act—will be denied.

### 3.      "Unfair" Prong

Whether conduct is unfair can be determined by application of a balancing test, whereby the court balances the impact of a business practice on its alleged victim against the "reasons, justifications, and motives of the alleged wrongdoer." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.,* 72 Cal. App. 4th 861, 886 (1999).  In conducting this balancing courts look for whether the harm to the consumer is outweighed by the utility of the defendant's practice. *Lozano*, 504 F.3d at 735–36.

In their complaint, plaintiffs allege that "defendant's action of using a defective battery in the vehicle causes injuries to consumers, like plaintiffs" because they cannot use or park their vehicle as advertised.  (Doc. No. 1-1 at 16.)  But plaintiffs do not allege that they have personally suffered any injury with regard to their vehicle.  Indeed, these same allegations have already been found by another court to be insufficient to state a cognizable UCL claim under the "unfair" prong against GM relating to its Bolt advertisements.  *See Rodrigues v. Gen. Motors LLC*, No. 23-cv-04488-WHA, 2023 WL 8852740, at *5 (N.D. Cal. Dec. 21, 2023) (dismissing UCL claim and noting that "no injury to plaintiffs on account of their vehicle has even been alleged here — and certainly not an ongoing one").

In addition, the conduct by GM that plaintiffs allege was unfair is actually "coextensive" with the conduct that underlies plaintiffs' fraud claims.  As a result, plaintiffs' UCL claim under the "unfair" prong is subject to the heightened pleading standard of Rule 9(b), which plaintiffs have failed to satisfy.  *See In re Intel Corp. CPU Mktg., Sales Prac. and Prod. Liab. Litig.*, 2023 WL 7211394, at *2 (9th Cir. Nov. 2, 2023) (affirming a district court's dismissal of the plaintiffs' UCL unfair conduct claim because the plaintiffs' allegations "were coextensive with those of the previously dismissed omission-based claims").  For this reason, another district court has dismissed a UCL "unfair" prong claim based on the same allegations that plaintiffs have alleged in this case.  *See McDonald*, 2024 WL 1601851, at *5–6 (dismissing the UCL claim and explaining that "plaintiff's entire UCL claim is grounded in fraud because it relies on the theory

1    that Defendant engaged in fraudulent conduct by knowingly misrepresenting the Bolt as safe and

2    a "leading electric vehicle" while failing to disclose its "serious safety concerns," and "plaintiff's

3    claim, thus, concerns a 'unified course of fraudulent conduct'") (quoting *Vess v. Ciba-Geigy*

4    *Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003)).[3]

5           For these reasons, defendant's motion to dismiss plaintiffs' UCL claim brought under the

6    "unfair" prong will be granted.

7    **C.      Leave to Amend**

8           Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ.

9    P. 15(a).  The Ninth Circuit maintains a policy of "extreme liberality generally in favoring

10   amendments to pleadings."  *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).

11   Reasons "such as undue delay, bad faith or dilatory motive . . .  repeated failure to cure

12   deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of

13   leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  A district court "should grant leave

14   to amend even if no request to amend the pleading was made, unless it determines that the

15   pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss and Liehe,*

16   *Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).

17          In their opposition to the motion to dismiss, plaintiffs first request that the court grant

18   them leave to file an amended complaint "to address the issues raised by [defendant's] motion,"

19   and then second request in their conclusion that the court grant them "leave to amend the

20   complaint consistent with the arguments made herein."  (Doc. No. 6.)  However, as noted above,

21   plaintiffs' opposition did not in any way address the bulk of the arguments advanced in the

22   motion to dismiss and they advanced just a few perfunctory arguments of their own.  Plaintiffs

23   also did not proffer any allegations that they would include in an amended complaint, though they

24   do state that they can attach a copy of their warranty agreement to an amended complaint.  (*Id.* at

25   7.)  Moreover, as alluded to above, plaintiffs' counsel has represented several individuals who

26   ─────────────────────
     [3] Plaintiffs' counsel in this action is the same counsel of record for the plaintiffs in *McDonald*,
27   and counsel used the same boilerplate allegations in both complaints, as well as numerous other
     complaints in which counsel represents individuals in lawsuits brought against GM regarding the
28   Bolt vehicle.

                                                      14

1    purchased a Bolt vehicle in lawsuits against GM based on the same allegations asserted by

2    plaintiffs in this action, and counsel has repeatedly employed template/boilerplate allegations

3    despite courts pointing out the deficiencies with those pleadings.  In sum, plaintiffs have not

4    demonstrated that leave to amend should be granted under the circumstances presented here.

5        Nonetheless, the court will grant plaintiffs an opportunity to file an amended complaint.

6    Plaintiffs are warned, however, that they should only file an amended complaint if they can

7    meaningfully attempt to cure the deficiencies that have been identified by this court, by

8    defendant, and by the courts in the several cases in which plaintiffs' counsel are representing

9    other individuals in their lawsuits asserting the same claims against GM.  Plaintiffs are further

10   cautioned that the court will not be inclined to grant further leave to amend if they do not use this

11   opportunity to meaningfully amend their complaint.

12       In addition, the court notes that plaintiffs filed their complaint initiating this action in San

13   Joaquin County Superior Court, and defendant removed this action based on diversity jurisdiction

14   pursuant to 28 U.S.C. § 1332.  (Doc. No. 1.)  In the joint case management statement that the

15   parties filed on May 14, 2024, the parties state that "[i]f the Court dismisses the fraud cause of

16   action, Plaintiffs will stipulate that the damages at issue are less than $75,000 and the matter

17   should be remanded."  (Doc. No. 12 at 2.)  Based on this representation, it appears that plaintiffs

18   may opt not to file an amended complaint in this action and instead seek to remand this case back

19   to state court and pursue only their warranty and repair claims in that forum.  The court will

20   therefore also direct plaintiffs to clarify their intentions in this regard.

21                                       **CONCLUSION**

22       For the reasons explained above,

23       1.    Defendant's motion to dismiss (Doc. No. 5) is granted, in part, as follows:

24             a.    Plaintiffs' fourth cause of action of common law fraud is dismissed, with

25                   leave to amend;

26             b.    Plaintiffs' fifth cause of action of a violation of the UCL based on the

27                   "fraudulent" prong, "unfair" prong, and "unlawful" prong predicated on

28                   plaintiffs' fraud and express warranty claims, is dismissed, with leave to

amend; and

    c.    Defendant's motion to dismiss plaintiffs' UCL claim based on the "unlawful" prong, to the extent that claim is predicated on plaintiffs' implied warranty claim, is denied;

2.    Within fourteen (14) days from the date of entry of this order, plaintiffs shall file their first amended complaint, or alternatively, a notice of their intent to not file a first amended complaint and to proceed only on the first through third causes of action brought in their original complaint, which were not challenged in defendant's motion to dismiss, and their fifth cause of action but only to the extent that the UCL "unlawful" prong claim is predicated on plaintiffs' implied warranty claim;

3.    If plaintiffs opt not to file a first amended complaint, then within fourteen (14) days from the date of entry of this order, plaintiffs shall also file either a notice clarifying their intent to seek an order remanding this action back to the San Joaquin County Superior Court, or a stipulation to remand this action; and

4.    Plaintiffs are warned that their failure to comply with this order may result in dismissal of this action due to plaintiffs' failure to prosecute.

IT IS SO ORDERED.

Dated:   __May 23, 2024__                                     

                                      DALE A. DROZD
UNITED STATES DISTRICT JUDGE

16